**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Racquet Club at Scottsdale Ranch Condominium Association, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Philadelphia Indemnity Insurance Company,<br><br>Defendant. | No. CV17-1215-PHX-DGC<br><br>**ORDER** |

This case involves an insurance coverage dispute stemming from a 2010 hail storm in the metro-Phoenix area. Plaintiff Racquet Club at Scottsdale Ranch asserts breach of contract and bad faith claims against Defendant Philadelphia Indemnity Insurance Company. Defendant has filed a motion for summary judgment. Doc. 49. The motion is fully briefed (Docs. 51, 54), and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, the motion will be granted in part and denied in part.

**I.     Background.**

The following facts are not disputed for purposes of summary judgment. *See* Docs. 50, 53. Plaintiff operates a condominium complex in Scottsdale, Arizona. The property spans nearly forty acres and has seventy buildings within five subdivisions: Hampton Courts, Casitas, Townhomes, Hammocks, and Villas. On October 5, 2010, a

hail storm caused damage to the property. Defendant had issued a commercial insurance policy to Plaintiff that covered physical damage caused by hail.

Precision Roofing maintained the property at the time of the storm and for several years thereafter, but never alerted Plaintiff to the presence of hail damage. Plaintiff began working with Paramount Roofing in early 2015. Paramount found hail damage to two buildings in the Villas and apprised Plaintiff of the damage in February 2015.

Plaintiff notified Defendant of the hail damage on June 30, 2015. Defendant sent its adjuster, Engle Martin & Associates, to inspect the property one week later. Defendant's roofing expert, Roof Technical Services, inspected the property in late August. Engle Martin issued a report in September that found a net loss of $2,390.15 ($10,361.89 total loss less depreciation and the $5,000 deductible). Defendant paid this amount four days later.

Plaintiff was sent a proof of loss form to sign on October 23, 2015. One month later, Defendant closed the file because it had not received a signed proof of loss.

In February 2016, Plaintiff retained Pride Adjusters to inspect the property and represent Plaintiff on the claim. Defendant reopened the file in March and sent Pride a letter with Defendant's damages estimate and a request for Pride's competing estimate. Pride submitted its report five months later, estimating a loss of nearly $4 million. Defendant rejected this estimate in early September 2016.

The parties agreed to joint inspections of the property, several of which occurred over the next two months. Core Consulting Group inspected the property on behalf of Defendant. Core issued a report on January 18, 2017, estimating the total cost of repairs to be $13,971.47. Defendant paid Plaintiff $6,351.32 on February 8, 2017.

Plaintiff filed suit two months later. Doc. 1. Plaintiff asserts breach of contract and bad faith claims, and seeks both compensatory and punitive damages. *Id.* ¶¶ 46-72. Defendant moves for summary judgment on each claim and the request for punitive damages. Doc. 49. With respect to the breach of contract claim, Defendant contends that coverage is precluded because Plaintiff breached the policy by waiting nearly five years

after the storm to notify Defendant of the loss, and the delay prejudiced Defendant. *Id.* at 8-13. Defendant further contends that the evidence does not support a finding of bad faith or an award of punitive damages. *Id.* at 13-16.

**II.     Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are drawn in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To avoid summary judgment, the factual dispute must be genuine – that is, the evidence must be sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

**III.    Discussion.**

    **A.     Notice of Loss.**

Under Arizona law, an insurer is not contractually obligated to provide coverage where (1) the insured breached the policy by failing to provide timely notice of a loss, and (2) the delay prejudiced the insurer. *See Lindus v. N. Ins. Co. of N.Y.*, 438 P.2d 311, 315 (Ariz. 1968); *Globe Indem. v. Blomfield*, 562 P.2d 1372, 1374 (Ariz. Ct. App. 1977); *Liberty Mut. Fire Ins. v. Mandile*, 963 P.2d 295 (Ariz. Ct. App. 1997); *Salerno v. Atl. Mut. Ins.*, 6 P.3d 758, 764 (Ariz. Ct. App. 2000). The insurer has the burden of proving

both the breach and resulting prejudice. *See Lindus*, 438 P.2d at 315 ("[T]he burden of proving prejudice is on the insurance company."); *Carpenter v. Super. Ct.*, 422 P.2d 129, 132 (Ariz. 1966) ("The insurer has the burden of proving the insured's breach . . . in order to defend successfully on that ground."); *Am. Pepper Supply Co. v. Fed. Ins.*, 93 P.3d 507, 510 (Ariz. 2004) (the insurer bears the same burden of proof – preponderance of the evidence – for all contract defenses).

The policy in this case required Plaintiff to give Defendant "prompt notice" of a loss. Doc. 50 at 65. The policy does not define "prompt notice," and Arizona cases set no bright-line rule on how long the delay must be to breach of a prompt notice provision. Defendant cites cases from other states finding various delays to be breaches of notice provisions as a matter of law. Doc. 49 at 9. Based on these cases, Defendant contends that no reasonable juror could find a five-year delay to be "prompt notice." *Id.*

In each cited case by Defendant, however, the insured actually knew of the loss when it occurred, or shortly thereafter. *See Port Servs. Co. v. Gen. Ins. Co. of Am.*, 838 F. Supp. 1402, 1404-05 (D. Or. 1993) (insured had knowledge that it was liable for soil contamination and the property was being excavated, but waited months to notify insurer); *Earle v. State Farm Fire & Cas.*, 935 F. Supp. 1076, 1080 (N.D. Cal. 1996) (insureds knew they had insurance, but did not tender defense of the underlying action until more than one year after the jury verdict); *Amica Mut. Ins. v. Kahn*, No. CIV.A. 13-11416-MBB, 2014 WL 3966181, at *6 (D. Mass. Aug. 12, 2014) (insureds who sought underinsured motorist coverage for an injured household member were aware of the auto accident and consulted with an attorney about filing a tort claim, but waited five years to notify insurer); *Fillhart v. W. Res. Mut. Ins.*, 684 N.E.2d 1301, 1303 (Ohio Ct. App. 1996) (insureds did not claim that their five-year delay in providing notice was reasonable where they were aware of auto accident and suit for damages); *Busch Corp. v. State Farm Fire & Cas.*, 743 P.2d 1217, 1218 (Utah 1987) (development company notified insurer of damage it caused to adjoining land five years after the occurrence and three years after being sued by the landowner); *Brumit v. Mut. Life Ins. Co. of N.Y.*, 156

S.W.2d 377, 378 (Tenn. 1941) (insured fully advised of medical disability five years before furnishing proof of loss to insurer).

Defendant does not contend that Plaintiff knew of the hail damage when the storm occurred in 2010. Rather, in support of its position that the hail damage was minimal, Defendant notes that Precision Roofing reported no hail damage to Plaintiff immediately after the storm or as part of its routine maintenance of the property over the next four and a half years. Doc. 49 at 3. Defendant asserts that the hail damage was first brought to Plaintiff's attention by Paramount in February 2015 – only four months before Plaintiff gave notice. Doc. 49 at 1, 4; *see* Doc. 52-1 at 3. Thus, the cases involving long delays after actual knowledge of the loss are inapposite.[1]

Plaintiff argues that an insured has no duty to report a loss until it knows or should have known of the loss, and that there are triable issues as to whether Plaintiff should have known of the hail damage earlier. Doc. 51 at 8. Defendant disagrees, citing *Smagala v. Sequoia Ins.*, 969 F. Supp. 2d 1271 (D. Or. 2013), and *Ideal Mutual Ins. v. Waldrep*, 400 So.2d 782 (Fla. Dist. Ct. App. 1981), for the proposition that no "discovery rule" applies in this context because courts look to the date of loss to determine promptness. Doc. 54 at 2. But neither case supports this proposition. *Smagala* required notice after discovery of the loss but before determining the specific cause. 969 F. Supp. 2d at 1281. *Waldrep* required notice when there had been an occurrence that "should lead a reasonable and prudent man to believe that a claim for damages would arise." 400 So. 2d at 785.[2]

---

[1] Defendant argues in its reply brief that Plaintiff's four-month delay in providing notice after it learned of the damage is sufficient to breach the policy. Doc. 54 at 4. The Court will not consider arguments raised for the first time in a reply brief. *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

[2] Defendant's reliance on the unpublished decision in *Alaniz v. Sirius Int'l Ins.*, 626 Fed. App'x 73 (5th Cir. 2015), is misplaced because the Fifth Circuit declined to decide whether the promptness analysis "should focus on the entire time since the hailstorm or only the period following when [the insured's] awareness of facts suggested hail damage." 626 Fed. App'x at 76.

Furthermore, Arizona case law does not support a rule that the timeliness of a notice depends solely on the date of loss, rather than the date when the insured actually or constructively knew of the loss. *See Lindus*, 438 P.2d 315-16 ("[W]e cannot assume that an eighteen-year-old boy would know that he was an additional insured under a family motor vehicle liability policy; that the automobile involved, although not the family car, was covered by this policy; and that he might be liable for negligence when [another student] . . . injured Lindus."); *Mandile*, 963 P.2d at 301 (noting that the duty to give notice did not ripen until the insured "believed it reasonably likely that it would make a claim under its excess carrier policies" (citation omitted)); *see also Am. Home Assur. v. Sand*, 253 F. Supp. 942, 946 (D. Ariz. 1965) ("[T]he phrase 'as soon as practicable' is not an exact time such as a fixed period would be and the Court therefore finds that three months is not an unreasonable length of time under the circumstances of this case, especially where [the insured] either might not have had knowledge of the existence of coverage or might have labored under a mistaken belief of his lack of liability for the accident[.]").[3]

Even if a discovery rule applies, Defendant contends, Plaintiff still breached the policy because it should have known of the hail damage well before five years had elapsed. Doc. 54 at 3. Defendant claims that the extensive damage allegedly caused by the hail storm should have been immediately apparent to Plaintiff, but cites no supporting evidence. *Id.* Defendant asserts that Plaintiff sent Precision to inspect for potential damage a week after the storm, and the inspection should have alerted Plaintiff to the presence of hail damage. *Id.*; *see* Doc. 49 at 3 (citing Doc. 50 ¶ 6). Plaintiff notes that nothing in Precision's invoices suggests that it inspected the property for hail damage on

---

[3] Citing *Port Services*, Defendant asserts that the notice and prejudice standards for Oregon and Arizona are the same. Doc. 49 at 9, n.2. Defendant is correct that each state requires the insurer to show prejudice from the delay. But the second inquiry under Oregon law is "whether the insured acted reasonably in failing to give notice at an earlier time." *Port Servs.*, 838 F. Supp. at 1404. Such a reasonableness inquiry would seem to include an inquiry into when the insured knew of the loss. In any event, Defendant has not shown as a matter of undisputed fact that Plaintiff acted unreasonably by providing notice when it did.

- 6 -

October 12, 2010 or anytime thereafter. Doc. 53 ¶ 6. The October 12 invoice shows only that Precision replaced four broken tiles and made other minor repairs to several roofs – none of which were attributed to hail. Doc. 50 ¶ 7, at 82. Defendant has not shown as a matter of undisputed fact that Plaintiff should have discovered the hail damage earlier than February 2015.

In summary, Defendant has not established that Plaintiff breached the policy as a matter of law by notifying Defendant of the hail damage on June 30, 2015. This is not surprising, because "timeliness of notice and excuse for delay are traditionally questions of fact." *State Farm Mut. Auto. Ins. v. Murnion*, 439 F.2d 945, 947 (9th Cir. 1971). The Court will deny Defendant's request for summary judgment on Plaintiff's breach of contract claim.[4]

**B.   Bad Faith.**

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The accompanying duty requires "that neither party will act to impair the right of the other to receive the benefits which flow from their . . . contractual relationship." *Id.* An insurer acts in bad faith where it "intentionally denies, fails to process or pay a claim without a reasonable basis." *Prieto v Paul Revere Life Ins.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble v. Nat'l Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981)). On summary judgment, the "appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 1010 (quoting *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 280 (Ariz. 2000)).

Defendant argues that summary judgment is warranted because the record is devoid of evidence that Defendant intentionally handled Plaintiff's claim unfairly.

---

[4] Given this ruling, the Court need not decide whether Defendant was prejudiced by the alleged delay (Doc. 49 at 10-13), or whether Defendant is estopped from claiming late notice (Doc. 51 at 14-15), to resolve the summary judgment motion.

- 7 -

Doc. 49 at 13-14. Plaintiff contends that Defendant acted in bad faith in three ways: (1) failing to conduct a prompt and full investigation, (2) closing the claim file early, and (3) failing to pay for known carport damage. Doc. 51 at 15-16.

### 1. Defendant's Investigation.

Plaintiff asserts that Defendant initially inspected only two buildings despite knowing that the claim was for damage to fifty buildings, and subsequently limited its investigation to a portion of the roofs in the Villas. *Id.* But Plaintiff cites no evidence in support of these assertions.

As noted above, the Court may enter summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the nonmoving party, therefore, Plaintiff has "an affirmative burden" to identify triable issues "with appropriate record citations in order to withstand the motion for summary judgment." *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citation omitted). The Court "has no independent duty 'to scour the record in search of a genuine issue of triable fact.'" *Id.* (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996)); *see* LRCiv 56.1(e) (parties "must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda"); Fed. R. Civ. P. 56(c)(1), (3) (the party asserting that a fact is genuinely disputed must "cit[e] to particular parts of materials in the record," and "[t]he court need consider only the cited materials"). Because Plaintiff has not cited to specific evidence showing that Defendant acted in bad faith in investigating the hail damage, the Court will grant summary judgment on this aspect of the bad faith claim under Rule 56(g). *See Celotex*, 477 U.S. at 322.[5]

---

[5] Defendant notes, correctly, that the record belies Plaintiff's assertion that Defendant initially inspected only two buildings. Doc. 54 at 9. Engle Martin's inspection report dated July 17, 2015, states that "we started our inspection with the Villas and inspected 2 units" because this is where Plaintiff's roofer had found hail damage, and "[w]e then continued our inspections and also inspected the Hammocks, Casitas, Hampton Courts, and Townhomes and did not find hail damage[.]" Doc. 54 at 16.

## 2. Closure of the Claim File.

On October 23, 2015, Defendant requested that Plaintiff execute a proof of loss. Doc. 53 ¶ 27. The policy required Plaintiff to comply with the request within 60 days – by December 22, 2015. Doc. 50 at 65. Defendant closed the claim file on November 24 due to the lack of a signed proof of loss. *Id.* at 131. According to Plaintiff, a jury reasonably could conclude that Defendant closed the file before the 60-day response period expired to deprive Plaintiff of a fair and honest claims handling process and to pressure Plaintiff to compromise the claim. Doc. 51 at 16. The Court does not agree.

Before closing the file, Defendant had conducted multiple inspections of the property and paid Plaintiff for damage found during those inspections without a signed proof of loss. Docs. 51 at 16, 52 ¶ 14. The letter advising Plaintiff that the file was being closed made clear that Plaintiff could still pursue the claim and only needed to contact Defendant to move forward with a settlement. Doc. 50 at 131. Defendant promptly re-opened the file and sent an estimate of damages to Plaintiff after receiving notice in March 2016 that Plaintiff had retained Pride to handle the claim. Doc. 53 ¶ 31. Defendant followed up with Plaintiff multiple times over the next several months to obtain a competing estimate, which ultimately was provided in late August 2016. *Id.* ¶¶ 32-33.

No reasonable jury could conclude from these facts that Defendant intentionally treated Plaintiff unfairly, or sought to force Plaintiff to compromise the claim, by closing the file early. Even if the closure constituted a breach of the policy or negligence on Defendant's part, bad faith requires more. *See Miel v. State Farm Mut. Auto. Ins.*, 912 P.2d 1333, 1339 (Ariz. Ct. App. 1995) ("Mere mistake and inadvertence are not sufficient to establish a claim for bad faith." (citing *Rawlings*, 726 P.2d at 576)). Bad faith arises when the insurer intentionally fails to process or pay a claim without a reasonable basis. *See Noble*, 624 P.2d at 868. Plaintiff presents no evidence from which a jury reasonably could infer that Defendant's intent in closing the file was to unreasonably delay the processing and payment of the claim. Moreover, Plaintiff does not claim to have suffered

any harm from the early closing of the file. The Court will grant summary judgment on this aspect of the bad faith claim.

### 3. Carport Damage.

Core inspected the property multiple times in October and November 2016. Doc. 1 ¶¶ 40-43, 53 ¶ 46. The inspection included two carports that Pride believed had some of the worst hail damage. Doc. 50 at 25. Core found that hail had impacted the corrugated metal carport roofs resulting in sporadic shallow dents. *Id.*

Core's report contains an entire section on the carport damage. *Id.* at 40. That section notes that Core "documented evidence of hail impacts of some degree at nearly every carport roof[.]" *Id.*; *see* Doc. 52-9 at 4. Most of the impacts were about a half inch in size, but some were larger. *Id.* The report includes photos of damage to one of the carports. Doc. 50 at 40. The report's conclusion sets forth Plaintiff's position that all but one of the carport roofs needed to be replaced. *Id.* at 47.

Plaintiff argues that Defendant acted in bad faith because it had no reasonable basis for refusing to pay for the carport damage. Doc. 51 at 16. Defendant does not dispute that it paid nothing on this portion of the claim. Doc. 52-6 at 9. Rather, Defendant asserts that the carports suffered only "sporadic, minor, hail indentations that could not easily be seen from below[.]" Doc. 54 at 9. But the policy contains no cosmetic damage limitation or exclusion, and Defendant cites no provision in the policy that otherwise would preclude coverage for minor or superficial damage. Docs. 52-6 at 10; *see* Doc. 50 at 49-73.

Plaintiff can establish bad faith by showing "the absence of a reasonable basis for denying benefits of the policy and the [D]efendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble*, 624 P.2d at 868. A jury reasonably could find that the policy covered the carport damage, Defendant knew the damage was a legitimate part of Plaintiff's claim, and Defendant refused to pay this portion of the claim knowing, or recklessly disregarding, that it lacked a reasonable basis. The Court therefore will deny summary judgment on this aspect of the bad faith claim.

*See id.*; *Rawlings*, 726 P.2d at 572 ("[A]n insurer that intentionally and unreasonably denies or delays payment breaches the covenant of good faith owed to its insured.").[6]

### 4. Bad Faith Conclusion.

Defendant argues that "[t]his record is devoid of evidence [of bad faith]." Doc. 49 at 14. In response, Plaintiff identifies the three instances of bad faith discussed above. Doc. 51 at 15-17. Because Plaintiff identifies no other basis for bad faith, the Court will grant summary judgment on all of the bad faith claim other than the failure to pay for carport damage. *Celotex*, 477 U.S. at 322.

## C. Punitive Damages.

"It is sufficient to establish the *tort* of bad faith that the defendant has acted intentionally." *Rawlings*, 726 P.2d at 577 (emphasis in original). But "punitive damages may not be awarded in a bad faith tort case unless the evidence reflects 'something more' than the conduct necessary to establish the tort." *Id.* (citing *Farr v. Transamerica Occidental Life Ins.*, 699 P.2d 376, 383 (Ariz. Ct. App. 1984)). That "something more" is bad faith conduct guided by an "evil mind." *Id.* at 578. To obtain punitive damages, Plaintiff must show that "the evil hand that unjustifiably damaged the objectives sought to be reached by the insurance contract was guided by an evil mind which either consciously sought to damage [Plaintiff] or acted intentionally, knowing that its conduct was likely to cause unjustified, significant damage to [Plaintiff]." *Id.* Plaintiff must prove Defendant's evil mind by clear and convincing evidence. *See Nardelli v. Metro. Grp. Prop. & Cas. Ins.*, 277 P.3d 789, 801 (Ariz. Ct. App. 2012) (citing *Linthicum v. Nationwide Life Ins.*, 723 P.2d 675, 681 (Ariz. 1986)). In ruling on summary judgment, the Court should consider the clear and convincing burden. *See Anderson*, 477 U.S. at 254 (holding that the substantive evidentiary burden of proof – including the heightened clear and convincing burden – applies on summary judgment).

---

[6] Defendant contends that its decision to reject Pride's $4 million estimate was "fairly debatable" and therefore does not rise to the level of bad faith. Doc. 49 at 15. But Defendant does not make the same argument with respect to its decision to pay nothing for the carport damage found by its own expert. *See* Doc. 54 at 9. And in any event, the question of whether that decision was fairly debatable would be for the jury to decide.

Defendant argues that "[t]he record lacks a scintilla of evidence to support a claim for punitive damages." Doc. 49 at 15. In response, Plaintiff asserts that punitive damages are warranted on two grounds: Defendant's failure to conduct a prompt and full investigation, and Defendant's early closure of the file. Doc. 51 at 17. Because the Court will grant summary judgment on those aspects of the bad faith claim, they cannot support punitive damages. Plaintiff identifies no other basis for punitive damages (*id.*), and the Court may enter summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Even if the bad faith claims for faulty investigation and early file closure had survived summary judgment, Plaintiff has failed to show the "something more" required for punitive damages – that these actions were the result of an "evil mind." *Rawlings*, 726 P.2d at 577-78; *see Linthicum*, 723 P.2d at 681 (explaining that punitive damages are recoverable in a bad faith action only where "the defendant's conduct is 'aggravated, outrageous, malicious or fraudulent' combined with an evil mind as evidenced by a showing that the defendant was consciously aware of the needs and rights of the insured and nevertheless, ignored its obligations"); *Gurule v. Ill. Mut. Life & Cas.*, 734 P.2d 85, 86 (Ariz. 1987) (noting that punitive damages are warranted "only if the defendant's conduct or motive involves 'some element of outrage similar to that usually found in crime'" (citations omitted)). This is particularly true when Plaintiff's clear and convincing burden of proof is considered. *See Anderson*, 477 U.S. at 254. The Court will grant summary judgment on Plaintiff's request for punitive damages.[7]

---

[7] Plaintiff does not assert that the refusal to pay for carport damage warrants an award of punitive damages. *See* Doc. 51 at 17. Nor would the evidence on this issue support such an award. Although a willful failure to pay a claim known to be valid can be sufficient to support punitive damages, *Farr*, 699 P.2d at 383, Plaintiff acknowledges that Defendant believes it paid for what it identified as hail damage. Doc. 52 ¶ 36. And the evidence cited by Plaintiff does not show that Defendant failed to pay for the modest carport damage "knowing that its conduct was likely to cause unjustified, significant damage to [Plaintiff]." *Rawlings*, 726 P.2d at 577.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 49) is **granted in part** and **denied in part**. The motion is **denied** with respect to the breach of contract claim, **granted** on all of the bad faith claim except failure to pay for carport damage, and **granted** on the request for punitive damages.

The Court will set a telephone conference with all parties and the Court for **January 30, 2019 at 3:30 p.m.** to set the dates for trial and the final pretrial conference. Counsel for Plaintiff shall initiate a conference call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall provide the dial-in information to counsel for all parties and the Court no later than 12:00 noon on January 29, 2019.

Dated this 22nd day of January, 2019.

*David G. Campbell*

David G. Campbell
Senior United States District Judge